**SONICS INTERNATIONAL, INC.**

v.

**Wallace B. JOHNSON.**

**Civ. A. No. 3–74–122–F.**

United States District Court,
N. D. Texas,
Dallas Division.

Jan. 17, 1975.

William F. Bowles, Dallas, Tex., for plaintiff.

Michael R. Cooper, Dallas, Tex., for defendant.

MEMORANDUM OPINION

ROBERT W. PORTER, District Judge.

This so-called "short swing profits" case is before the Court on Plaintiff's Motion for Summary Judgment and the Defendant's Motion to Dismiss. For the reasons explained below, the Defendant's Motion to Dismiss is denied and the Plaintiff's Motion for Summary Judgment is partially granted.

Sonics International, Inc. (hereinafter referred to as "Sonics") is suing its former vice-president, Wallace B. Johnson, to recover from him certain profits that he allegedly made on the purchase and sale of Sonics stock. Sonics claims the profits are within the scope of 15 U.S.C. § 78p(b) (1972), which states, in pertinent part:

> For the purpose of preventing the unfair use of information which may have been obtained by such . . . officer by reason of his relationship to the issuer, any profit realized by

him from any purchase and sale, or any sale and purchase, of any equity security of such issuer . . . within any period of less than six months . . . shall inure to and be recoverable by the issuer. . . . [N]o such suit shall be brought more than two years after the date such profit was realized. *This subsection shall not be construed to cover . . . any transaction or transactions which the [Securities and Exchange] Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection* (emphasis added).

Relevant to a disposition of this matter is SEC Rule 16b–6 which states, in part:

"(a) To the extent specified in paragraph (b) of this section the Commission hereby exempts as not comprehended within the purposes of section 16(b) of the act any transaction or transactions involving the purchase and sale or sale and purchase of any equity security where such purchase is pursuant to the exercise of an option or similar right either (1) acquired more than six months before its exercise, or (2) acquired pursuant to the terms of an employment contract entered into more than six months before its exercise."

"(b) In respect of transactions specified in paragraph (a) of this section the profits inuring to the issuer shall not exceed the difference between the proceeds of sale and the lowest market price of any security of the same class within six months before or after the date of sale. Nothing in this section shall be deemed to enlarge the amount of profit which would inure to the issuer in the absence of this rule." 17 CFR § 240.16b–6(a) and (b).

It is the conclusion of the Court that the transactions in question were in violation of the above cited *statute,* but that they were also partially exempted from the ban on short swing profits provided by the cited *regulation* for transactions involving the exercise of stock options.

From the uncontested facts, it clearly appears that in October of 1969, Sonics granted Mr. Johnson an option for 5,500 shares of its common stock. Nothing further happened until June 15, 1971, when Mr. Johnson exercised part of the option and bought 3,500 shares of the stock. He sold 1,100 shares on December 17, 1971, and sold another 500 shares on February 11, 1972. On February 29, 1972, Mr. Johnson exercised the remainder of his option and bought 2,000 shares of Sonics common stock. This lawsuit was filed February 11, 1974.

Several "opposite" transactions (*i. e.* a purchase followed by a sale or a sale followed by a purchase) occurred in this fact situation; however, only one of these was in violation of Section 78. In other words, only one was completed within a six-month time period. The sale of 1,100 shares on December 17, 1971, followed the acquisition of the stock by the Defendant on June 15, 1971, more than six months preceding the sale. (Likewise, the sale of 500 shares on February 11, 1972 occurred more than six months after the June, 1971, acquisition of the shares.) The exercise of the option by the Defendant on February 29, 1972, when he acquired 2,000 shares, however, occurred within six months of both the December 17th sale and the February 11th sale. Thus, when the Defendant exercised the option on February 29, 1972, he violated Section 78.

■ Since the violation was a transaction completed pursuant to the exercise of a stock option, it falls within the purview of the Rule 16b–6 providing a partial exemption for such opposite transaction. Although that particular regulation of the commission is something less than a model of clarity, it is the opinion of the Court that the Rule does not totally exempt an insider from liability when his purchase is pursuant to the exercise of an option. It merely provides a maximum limit on the measure of damages. See Kornfeld v. Eaton, 327 F.2d 263 (2nd Cir., 1964). In

*Kornfeld,* the Second Circuit upheld the validity of the regulation with respect to the Securities Act's two year period of limitation. Although the *Kornfeld* decision does not specifically address the question of whether the regulation provides a total exemption or merely a limitation on liability, the opinion does state that "the rule in effect provides for determining costs by the *lowest market price* of the shares within six months before or after the date of sale." (emphasis added). 327 F.2d at 265.

■ The Defendant Johnson has argued, irrespective of the regulation, that the transaction involved is without the two year limitation. The statute in question provides, in pertinent part:

> " . . . Suit to recover such profits may be instituted at law or in equity in any court of competent jurisdiction by the issuer . . . but no such suit shall be brought more than two years after the date such profit was realized." 15 U.S.C. § 78p(b) (1972).

Johnson argues that the limitation period should run from the date upon which he initially entered into the illegal, opposite transaction. Therefore, he asserts that the date of his original sale of the stock, December 17, 1971, should be the beginning date for determining limitations. The theory is that this 1971 date is the date on which profits were first "realized" within the meaning of the Securities Act.

Although the question does not appear to have been settled by the courts, it is my view that the most logical interpretation of the statute would be that the profit is "realized" only when the last transaction necessary to this computation occurred. This would be the purchase of 2,000 shares of Sonics by Mr. Johnson on February 29, 1972, pursuant to the exercise of the option. In *Kornfeld, supra,* the court briefly mentioned an *amici* brief filed by the Securities and Exchange Commission stating that the Commission's view was that the

limitation period commenced on the date of the sale or purchase, whatever event occurred last. 327 F.2d at 265. Such an interpretation also appears to be the accepted position of the commentators in the field of securities regulation. See 2 Loss, Securities Regulations 1056 (1961); Keller and Green, Application of Section 16b of the Securities and Exchange Act of 1934 to Insiders' Transactions Under Employees Stock Option Plans, 17 Bus.Lawyer 402, 405 (1962).

The only case that the Defendant cites in support of his theory of defense is Dabney v. Atlas Corporation, CCH Fed. Sec.L.Rep. ¶ 90,650 (S.D.N.Y.1954). The facts of the *Dabney* case, however, differ from the facts of the case at bar. In *Dabney,* the insider had sold stock for cash *plus* an option to purchase other stock. The court, therefore, held that the profit in question was "realized" at the time of the receipt of the option. This was the necessary conclusion because the option was a part of the consideration for the sale of stock. In the instant case, the option was not consideration for the sale of stock but was obtained by the Defendant in connection with the rendering of services to the Plaintiff corporation at a time long before the transactions in question. The initial receipt of the option by the Defendant was, therefore, unrelated to an "opposite" transaction prohibited by the statute. Only when the stock was *received* pursuant to the exercise of the option, preceded by a sale of the same class stock within six months, did a prohibited, opposite transaction occur. It is at this point that limitations should begin to run. In the instant case that date is February 29, 1972, when the Defendant completed the exercise of the option within six months of two separate sales of the same class stock. Both the December 17th sale and the February 11th sale of Sonics stock by Mr. Johnson were opposite to his subsequent acquisition of Sonics stock by exercise of the option on February 29, 1972, and since both sales occurred less than six

months prior to the exercise, they were both prohibited by Section 78, subject to the above-mentioned regulation.

 The Defendant also argues that he should not be liable under § 16(b) because he asserts that all of his actions throughout the entire course of the transactions in question were with the full knowledge of the other officers of the Plaintiff corporation. Such an argument is, of course, not a defense to a § 16(b) claim. Liability under the statute attaches without regard to fraudulent intent. See Smolowe v. DeLendo Corporation, 136 F.2d 231 (2nd Cir., 1943) cert. denied 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 and also Loss, supra, p. 1041, n. 14.

In consideration of the above discussion, the Court is of the opinion that Plaintiff Sonics is entitled to judgment as a matter of law in an amount equal to the difference between the proceeds of the sale of December 17, 1971, and the lowest market price of the security between the dates of June 17, 1971 and June 17, 1972; plus, the difference between the proceeds of the sale of February 11, 1972, and the lowest market price of the security between the dates of August 11, 1971, and August 11, 1972. Both of these time periods represent periods within six months before and after the date of the sales involved in the prohibited, opposite transaction. This is the time period prescribed by Rule 16b-6, as the measure of damages, for violations of Section 78 that occur pursuant to the exercise of a stock option.

In anticipation of this ruling on the Plaintiff's Motion for Summary Judgment, the parties have supplied the Court many facts by way of affidavit. Although among these facts are the lowest bid price between the dates specified, there has as yet been no showing of the lowest *market* price of the security within those periods of time. It will, therefore, be necessary for the litigants to establish these facts as a matter of proof, and only a partial summary judgment

can now be entered. Counsel for the parties are requested to supply to the Court, by way of affidavit or otherwise, the necessary factual information to enter judgment in accordance with this opinion.

It is so ordered.